

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 21, 2023

**By ECF**

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, New York 10007

    Re:   *United States v. Kwame Garnett*, S2 21 CR 414 (KPF)

Dear Judge Failla,

    The Government respectfully submits this letter in advance of the defendant's sentencing, currently scheduled to proceed on Monday, June 26, 2023 at 3:00 PM. For the reasons set out below, the Government respectfully requests that the Court impose a term of imprisonment of between 144 and 165 months, the applicable range pursuant to the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") and a sentence that is sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing, in particular here, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant by incapacitating him for the duration of his term of imprisonment.

## Background

    On February 22, 2022, a grand jury sitting in the Southern District of New York voted an indictment charging the defendant and eight co-defendants with participating in a conspiracy to distribute cocaine and fentanyl, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B), and 841(b)(1)(C) ("Count One"). On February 24, 2022, the defendant was arrested and detained, following the execution of search and arrest warrants at his residence where members of the Federal Bureau of Investigation ("FBI") and New York City Police Department ("NYPD") found the defendant as well as a firearm, approximately 50 cartridges of compatible ammunition, and dozens of retail units of cocaine and fentanyl, all seized inside what was a small apartment in which multiple minors also lived with the defendant and their mother. On March 1, 2022, based on these seizures, a grand jury sitting in the Southern District of New York voted the above-captioned indictment, recharging the defendant with Count One and adding two further counts of using and carrying a firearm during and in relation to and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) ("Count Four"), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) ("Count Five"). On May 24, 2023, the defendant

pleaded guilty to a lesser-included offense of Count One (*i.e.*, 21 U.S.C. §§ 846 and 841(b)(1)(C)) and to Count Four, stipulating that at least two kilograms but less than three-and-one-half kilograms of cocaine were involved in Count One.[1]

In terms of the instant offense, the Government generally relies on the description of the offense conduct set out in the Presentence Investigation Report, which draws principally from information that the Government supplied to Probation. (*See* Presentence Investigation Report ("PSR") at ¶¶ 34). As discussed further below, the Government views the defendant as among the four most culpable defendants charged in this case for their involvement in trafficking drugs from 1830 Lexington Avenue, a building located in the New York City Housing Authority's Johnson Houses, as measured by their instant offense conduct magnified through their criminal history and the harm for which they are responsible to the community.

In terms of the defendant's criminal history, as stated in the PSR, the defendant has three prior felony convictions. (*See* PSR at ¶ 47). *First*, on July 2, 2009, the defendant was sentenced to three-and-one-half years' imprisonment and two-and-one-half years' post-release supervision following his conviction for Attempted Robbery in the First Degree, in violation of New York Penal Law §§ 110.00 and 160.15(1). In terms of the underlying offense conduct, on or about November 15, 2008, at age 17, the defendant participated in two robberies in which he and one or more other participants confronted successive victims in the vicinity of the Johnson Houses at gunpoint. In the first robbery, the defendant and two others robbed an undercover police officer of the NYPD. In the second robbery, the defendant and three others, including Co-Defendant Isaiah Thomas, attacked another victim, whom they repeatedly pistol-whipped in the head.[2] *Second*, on July 18, 2013, the defendant was sentenced to three-and-one-half years' imprisonment and two years' post-release supervision following his conviction for Criminal Possession of a Narcotic Drug in the Fourth Degree, in violation of New York Penal Law § 220.09(1). In terms of the underlying offense conduct, on or about November 21, 2012, at age 21, the defendant sold a quantity of phencyclidine (*i.e.*, "PCP") to another undercover police officer of the NYPD in the vicinity of the Johnson Houses. *Third*, on January 22, 2015, the defendant was sentenced to between one-and-one-half and three years' imprisonment following his conviction for Attempted

---

[1] In his sentencing submission, the defendant invites the Court to ignore the weight of cocaine to which he stipulated and focus instead on the quantity of drugs that he sold principally to one undercover police officer, whom the defendant regularly pressed to purchase more cocaine on a more frequent basis across multiple years of the charged conspiracy, asking the "Court, when considering an appropriate sentence . . . to evaluate the plea agreement's stipulated [ ] range, to weigh it against the *actual evidence* of [his] own sales." (Def.'s Sentencing Submission at 4) (emphasis added). Obviously, to the extent that the defendant is somehow arguing—whatever his conception of *actual evidence*—that his offense conduct does not involve at least two kilograms but less than three-and-one-half kilograms of cocaine, he is in breach of the plea agreement. For that reason, the Government anticipates that at sentencing, the defendant will confirm that his offense conduct involved the stipulated quantity of cocaine to which he agreed.

[2] In the condensed timeframe within which the Government, like Probation (*see*, *e.g.*, PSR at ¶ 52), has researched certain issues tied to sentencing, the Government will supplement this record with any additional information obtained that is pertinent to sentencing.

Promotion of Prison Contraband in the First Degree, in violation of New York Penal Law §§ 110.00 and 205.25(2). In terms of the underlying offense conduct, as the PSR specifies, the offense conduct occurred on or about February 3, 2014 (PSR at ¶ 54), when the defendant was incarcerated in the custody of the New York Department of Corrections and Community Supervision. At this time, the Government possesses no further information concerning the defendant's offense conduct giving rise to this conviction and sentence, though will supplement this record based upon any further information obtained in advance of sentencing.

## Applicable Law

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines are not mandatory; however, it also held that a district court must "consult" the Guidelines and "take them into account" when fashioning a sentence. *Id.* at 264. As the Supreme Court has explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a court must proceed to consider seven factors outlined in 18 U.S.C. § 3553(a): (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); (ii) the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); (iii) "the kinds of sentences available," *id.* § 3553(a)(3); (iv) the Guidelines range itself, *see id.* § 3553(a)(4); (v) any relevant policy statement by the United States Sentencing Commission, *see id.* § 3553(a)(5); (vi) "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and (vii) "the need to provide restitution to any victims," *id.* § 3553(a)(7).

The statute directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, pursuant to which the sentence needs:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence to criminal conduct;
(C)  to protect the public from further crimes of the defendant; and
(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* § 3553(a)(2). As is relevant here, the Supreme Court has made clear that a sentence of imprisonment cannot be imposed or lengthened due to consideration of rehabilitative opportunities arising from incarceration. *See Tapia v. United States*, 564 U.S. 319, 326-335 (2011).

While a district court may not presume that an appropriate sentence lies within the Guidelines range, "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. The relevance of the Guidelines throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and

the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349. To the extent a district court varies from a Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

### **Sentence**

Here, a sentence within the applicable Guidelines range of 144 to 165 months' imprisonment—which is calculated in the PSR and which the defendant agrees is applicable—would be sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. A Guidelines sentence would also be sufficient, but not greater than necessary, to afford adequate deterrence to criminal conduct and to protect the public from further violent crimes of the defendant.

The defendant, who was 30 at the time of his arrest in February 2022, has a self-reported and uncorroborated employment history of one month during his entire adult life, which he has instead filled with criminal activity and incarceration imposed for criminal activity. Since 17, he has committed crimes involving the trafficking of drugs and the use and possession of firearms on multiple occasions and over extended time periods, all in the vicinity of the Johnson Houses, whose residents have suffered from his criminal activity there for well over a decade. After robbing two victims at gunpoint with others in the vicinity of the Johnson Houses in November 2008, one of whom was an undercover police officer involved in street enforcement and the other of whom was pistol-whipped repeatedly in the head, the defendant was incarcerated from November 2008 to November 2011. Within one year of being released from state prison and when still on post-release supervision, the defendant was arrested in November 2012 for selling PCP to another undercover police officer again in the vicinity of the Johnson Houses. From November 2012 to June 2017, the defendant was incarcerated for this crime and a further crime that he committed when incarcerated in state prison. Within two years of being released from state prison and again when still on post-release supervision, the defendant sold cocaine to an undercover police officer in connection with the investigation of the FBI and NYPD giving rise to this case again in the vicinity of the Johnson Houses.

At bottom, the Government respectfully submits that sentencing is appropriately focused on the choices of defendants and that is particularly true here. As the preceding paragraph shows, the defendant has chosen for his entire adult life to commit drug trafficking crimes and crimes of violence in the vicinity of the Johnson Houses. He made those choices in substantial part after receiving substantial state prison terms, three years and almost five years, which had zero impact whatsoever on his instinct to recidivate in the same place. And in the instant offense conduct, the evidence consisting of controlled transactions and surveillance combined with geographic location information for his cellphone, show that the defendant on a typically daily basis sold cocaine and fentanyl in the vicinity of the Johnson Houses from June 2019 through February 2022, frequently operating out of the building and indeed the apartment where his late grandmother raised him. The hours of video recordings of those controlled transactions show the defendant and his co-conspirators selling drugs on a hand-to-hand basis inside the lobby and elevators and stairwells and courtyard of 1830 Lexington Avenue as its residents, including families with young children,

try to reach or leave their homes, just trying to make it past the defendant and his largely large, male, co-conspirators and the desperate addicts who cluster around them. Although the Government will speak further to this point at sentencing, it is of course correct as a matter of law that within the imagined world of the statutory law that "[t]his is a Title 21 offense and there is no identifiable victim." (PSR at ¶ 35). Of course, in the real world, the victims of the defendant and his co-conspirators number in the thousands. When a citizen of this country repeatedly and in defiance of multiple and powerful interventions of the criminal justice system persists in committing serious criminal activity, there must be a serious consequence, one intended to punish, to specifically deter, and to incapacitate the defendant, and the Government respectfully requests that the Court to impose that consequence.

Against those co-conspirators and in particular co-defendants, the Government views the defendant as among the most culpable band of offenders. The evidence of his daily involvement in the offense conduct is the strongest among his co-defendants. The evidence of his use and carrying of a firearm is equivalent to that of Co-Defendant Davon Hawkins. His criminal history, like that of Co-Defendants Isaiah Smith and Anthony Smith and to a lesser degree Davon Hawkins, shows a sustained commitment to the instant offense conduct, particularly at the Johnson Houses.

In recommending that a variance to one-half the *minimum* of the Guidelines range for Count One is appropriate, Probation appears only to cite the involvement of the defendant's family in the instant offense conduct, referring to "family members involved in the drug trade." (*See* PSR at 28-29). The Government respectfully but forcefully disagrees and views the involvement of the defendant's family members in the instant offense as constituting an *aggravating* factor, if any differentiating factor at all. It is the defendant who typically refers customers to his family members, not vice versa.

Finally, the Government agrees that the defendant's arthritis is not irrelevant to sentencing and is sympathetic to it. His diagnosis and receipt of treatment for that arthritis as a result of his arrest and detention is one positive collateral consequence of the investigation and prosecution in this case, and the Government is confident that once the defendant is designated to a facility of the Bureau of Prisons, he will continue to benefit from that positive collateral consequence. With that said, the Government respectfully submits that the defendant's medical condition should not materially impact the term of imprisonment that the Court ultimately chooses to impose but rather at most influence where within the applicable Guidelines range sentence is set. *First*, the defendant, as the record at sentencing establishes, committed the instant offense conduct when he was symptomatic and indeed allegedly suffering from his arthritic condition, which he could fairly have anticipated would have impacted him during any period of incarceration resulting from his criminal activity, a possible outcome with which he was very familiar. *Second*, the defendant was able to commit the instant offense conduct when suffering from his arthritic condition. Although the Government does not doubt that the use of a cane is a comfort to him and appropriate where permitted by penal regulation intended to ensure the safety of inmates and correctional officers, it is also the case that the defendant was able to sell drugs on the street for years leading up to the time of his arrest without one, and there is no reason to believe that the defendant's arthritic condition will prevent him from recidivating upon his eventual release.

Page 6

## Conclusion

For the reasons set out above, the Government respectfully requests that the Court sentence the defendant to a term of imprisonment within the range of 144 to 165 months, which is the applicable range pursuant to the Guidelines, and five years' supervised release. In addition, the Government respectfully requests that at the time of sentencing, the Court enter the a forfeiture order for $5,000, whose amount the defendant admitted in the plea agreement and a form for which the Government will supply in advance of sentencing.

Respectfully,

DAMIAN WILLIAMS
United States Attorney

By: *Thomas John Wright*
Thomas John Wright
Assistant United States Attorney
(212) 637-2295

cc: Richard Rosenberg and Clara Kalhous (Counsel to Defendant Kwame Garnett) (by ECF)